# **Exhibit G**

**INTERNATIONAL CENTRE FOR SETTLEMENT OF INVESTMENT DISPUTES**

**Cube Infrastructure Fund SICAV and others**
Respondents on Annulment

v.

**Kingdom of Spain**
Applicant on Annulment

**(ICSID Case No. ARB/15/20) – Annulment Proceeding**

**DECISION ON THE EUROPEAN COMMISSION'S APPLICATION FOR LEAVE TO INTERVENE AS A NON-DISPUTING PARTY**

*Members of the ad hoc Committee*
Prof. Dr. Jacomijn van Haersolte-van Hof, President of the *ad hoc* Committee
Mr. Álvaro Castellanos Howell, Member of the *ad hoc* Committee
Mr. Timothy J. Feighery, Member of the *ad hoc* Committee

*Secretary of the ad hoc Committee*
Ms. Anna Toubiana

2 April 2020

# Table of Contents

I.   PROCEDURAL HISTORY ..................................................................................................1

II.  THE EUROPEAN COMMISSION'S APPLICATION .......................................................1

III. THE DISPUTING PARTIES' POSITIONS........................................................................3

    A.   Spain's Position........................................................................................................3

    B.   Cube's and Demeter's Position................................................................................4

IV.  THE COMMITTEE'S ANALYSIS......................................................................................7

    A.   The Applicable Legal Standard................................................................................7

    B.   The EC's Application to Intervene Pursuant to Rule 37(2) of the Arbitration Rules or as an Expert........................................................................8

V.   DECISION..........................................................................................................................12

*Cube Infrastructure Fund SICAV and others v. Kingdom of Spain*
(ICSID Case No. ARB/15/20) – Annulment Proceeding

---

## I. PROCEDURAL HISTORY

1. On 24 February 2020, the European Commission (the "**EC**" or the "**Commission**") submitted with the ICSID Secretariat an Application for Leave to Intervene as a Non-Disputing Party dated 21 February 2020 (the "**Application**") pursuant to Rule 37(2) of the ICSID Arbitration Rules (the "**Arbitration Rules**").

2. The Respondents on Annulment are Cube Infrastructure Fund SICAV, Cube Energy S.C.A., Demeter Partners S.A., Demeter 2 FPCI, and Cube Infrastructure Managers S.A. (together, "**Cube and Demeter**" or "**Respondents**").

3. The Applicant is the Kingdom of Spain ("**Spain**").

4. Spain and Cube and Demeter are collectively referred to as the "**Parties**."

5. Pursuant to the Committee's instructions of 26 February 2020, the Parties filed their observations on the EC's Application on 4 March 2020 (the "**Observations**").

6. After reviewing the Parties' Observations, on 6 March 2020, the Committee invited the Parties to submit comments on the opposing Party's Observations by 16 March 2020 (the "**Comments**").

## II. THE EUROPEAN COMMISSION'S APPLICATION

7. In its Application, the Commission states that its request to intervene in the present annulment proceeding is limited to the following three points:[1]

    *(a) Article 26 of the Energy Charter Treaty ["**ECT**"] does not apply "intra-EU," so that the Arbitral Tribunal lacked jurisdiction and committed an error leading to annulment when confirming its jurisdiction to hear the case; and*

    *(b) Union law on State Aid forms part of the applicable law before the Arbitral Tribunal, which is of relevance in particular for the interpretation and application of the substantive investment provisions of the Energy Charter Treaty, and precludes in the present case the award of damages against Spain;*

---

[1] Application, ¶ 23.

1

> *by ignoring and hence not applying them, the Arbitral Tribunal failed to apply the applicable law, which must lead to the annulment of the contested award;*
>
> *(c) Union law on State Aid requires a stay of enforcement of the Award, because Spain is under an obligation under EU law, and hence of international law applicable to the parties, not to pay the contested award.*

8. The Commission then elaborates on the reasons why it considers that its intervention satisfies the conditions set out in Rule 37(2) of the Arbitration Rules, and states that its intervention "would show that the Arbitral Tribunal has committed several errors of law, which necessarily have to lead to the annulment of the award."[2]

9. Specifically, the EC asserts that its intervention would assist the Committee in the determination of factual and legal issues, which fall within the scope of the dispute.[3] The Commission further contends that it has a significant interest in the proceedings as a guardian of the EU Treaties and plays a central role in the interpretation and application of rules relating to investment protection within the EU.[4] The EC also notes that it has a central role in the State Aid application system as established in Articles 107 and 108 of the Treaty on the Functioning of the European Union ("**TFEU**").[5]

10. The Commission requests the Committee to grant it leave to intervene, and to set a deadline for the Commission to file a written *amicus curiae* submission.[6] The Commission offers that, if necessary, it could also first file an *amicus curiae* submission on the question of a stay of enforcement of the Award.[7] The EC also requests access to the documents filed in the proceeding and permission to attend hearings.[8] Finally, the EC "recalls that it could also be invited as an expert on EU law, rather than as a non-disputing party."[9]

---

[2] *Id.*, Sections 3-4; ¶ 45.
[3] *Id.*, Section 3.
[4] *Id.*, Section 4; ¶ 53.
[5] *Id.*, ¶ 55.
[6] *Id.*, ¶ 57.
[7] *Id.*
[8] *Id.*
[9] *Id.*

2

### III.   THE DISPUTING PARTIES' POSITIONS

#### A.   Spain's Position

11.   Spain requests the Committee to grant the EC's Application as it considers that it complies with all the requirements set out in Rule 37(2) of the Arbitration Rules.[10]

12.   *First*, Spain argues that the EC's intervention would assist the Committee in the determination of factual and legal issues related to the proceeding by bringing a perspective, particular knowledge or insight that is different from that of the disputing Parties.[11] According to Spain, the Commission's arguments would help the Committee make an informed decision "not only because of the knowledge on the EU legal system that the Commission can provide, but also because of the knowledge that the Commission has about the ECT itself, given that it was the Commission who, on behalf of the EU, promoted and signed the ECT."[12] Spain adds that the EC is "endowed with the most absolute independence" as recognized by Article 245 of the TFEU.[13]

13.   *Second*, Spain submits that the Commission's Application refers to a matter within the scope of the dispute.[14] Spain argues that the issues raised by the Commission "go to the very core of the grounds for annulment invoked in this proceeding."[15] According to Spain, the matters addressed in the EC's Application refer to issues within the powers of the *ad hoc* Committee.[16] Spain adds that the Committee should not "repeat the mistake committed by the Cube Tribunal," and should allow the EC's intervention and insight in the annulment proceeding.[17]

14.   *Third*, Spain argues that the Commission has a significant interest in the proceeding "as it affects an issue of general interest like the application of the ECT, signed by the EU and its Member States, within its territory and in the matter of State Aid regulations, so

---

[10] Spain's Observations, ¶¶ 13-29.
[11] *Id.*, ¶¶ 14-18.
[12] *Id.*, ¶ 15.
[13] *Id.*, ¶¶ 17-18; Spain's Comments, ¶ 16.
[14] Spain's Observations, ¶¶ 19-25.
[15] *Id.*, ¶ 20.
[16] Spain's Comments, ¶ 4.
[17] Spain's Observations, ¶ 24.

linked to the very roots of the European Union and its fundamental freedoms."[18] Spain submits that the Commission's interest in the present proceeding is unquestionable, "not only because of its general role as the guardian of the EU Treaties, but also because the effective application and enforcement of its State Aid Decision is at stake in this proceeding."[19] Spain cites to the tribunals in *AS PNB Banka v. Latvia* and *Electrabel S.A. v. Hungary* in support of its position in this regard.[20]

15. *Finally*, Spain submits that Rule 37(2) of the Arbitration Rules allows the Committee to take into account other criteria, including the fact that the Commission's intervention will contribute to the "good end of the present proceeding as it will decisively illustrate on the grounds for annulment of the Award," and to the issue of a stay of enforcement of the Award.[21] Spain contends that given the early stages of the proceeding, no disruption can be caused by the Commission's intervention as both Parties would have sufficient time and opportunity to comment on any submission made by the Commission.[22]

16. Based on the above arguments, Spain concludes that the Commission's intervention should be granted. Spain further submits that the EC should be granted access to all documents produced in this arbitration, and that the Commission should be allowed to intervene at the hearing.[23]

    B.   **Cube's and Demeter's Position**

17. Cube and Demeter submit that the EC's Application does not satisfy Rule 37(2) of the Arbitration Rules, and that the Committee should deny the petition.

18. *First*, Cube and Demeter argue that the EC's Application addresses issues that the Tribunal finally decided and that the ICSID Convention does not permit the Committee

---

[18] *Id.*, ¶ 26.
[19] *Id.*, ¶ 29.
[20] Spain's Comments, ¶¶ 19-20; *AS PNB Banka and others v. Republic of Latvia*, ICSID Case No. ARB/17/47, Procedural Order No. 3, 30 October 2018, **Spain's Annex 057**; *Electrabel S.A. v. Republic of Hungary*, ICSID Case No. ARB/07/19, Procedural Order No. 4, 28 April 2009, **Spain's Annex 058**.
[21] Spain's Observations, ¶ 30, 36.
[22] *Id.*, ¶ 32.
[23] *Id.*, ¶¶ 34-39.

4

to revisit.[24] Cube and Demeter contend that despite the circumscribed nature of the annulment process under the ICSID Convention, the EC states that it wishes to show the errors in law that the Tribunal made, which would lead to the annulment of the Award.[25] According to Cube and Demeter, the Committee does not have the power or authority to consider the allegations regarding the ECT application to the *intra*-EU disputes and the EU law on State Aid as part of the applicable law under the ECT.[26] Rather, the Committee may only consider whether one of the annulment grounds pursuant to Article 52(1) of the ICSID Convention is applicable.[27]

19. *Second*, Cube and Demeter state that the EC does not bring a perspective, particular knowledge, or insight to the proceeding that is different from Spain.[28] Cube and Demeter contend that the EC's views are not independent from Spain and adds that Spain has already presented the arguments the EC has raised in the underlying arbitration. Cube and Demeter add that admitting the Commission's participation "would result in repetitive pleadings, forcing Cube and Demeter to defend themselves against two entities rather than one" and would increase costs in a way that disproportionately burdens Cube and Demeter.[29] In support of this argument, Cube and Demeter cite to the tribunal in *Eli Lilly v. Canada*.[30]

20. *Third*, Cube and Demeter submit that the Commission does not have a valid "significant interest" in this proceeding in its role as guardian of the EU Treaties.[31] In reality, according to Cube and Demeter, the EC's interest is a "self-serving political objective to rewrite the system of international treaty arbitration within Europe."[32] The EC's attempts to intervene in dozens of *intra*-EU ECT proceedings involving Spain and other EU Member States is a "political strategy aimed at rendering the investment treaty arbitration process and the ECT itself invalid within the EU," and stripping investors

---

[24] Respondents' Observations, pp. 2-4.
[25] *Id.*, p. 3.
[26] *Id.*
[27] Respondents' Comments, p. 2.
[28] Respondents' Observations, p. 4.
[29] *Id.*
[30] *Id.*
[31] *Id.*, p. 5.
[32] *Id.*

5

like Cube and Demeter of their rights under the ECT.[33] Cube and Demeter submit that the EC's political agenda has no bearing in the present annulment proceeding and, in any case, does not amount to a valid or significant interest that would justify intervention.[34]

21. *Fourth and finally*, Cube and Demeter submit that the EC's arguments are meritless as the Tribunal in the underlying arbitration rejected the *intra*-EU objection.[35] Indeed, the Tribunal first rejected Spain's reading of EU law into the ECT and its argument that EU law prevails over all other international law between EU Member States.[36] The Tribunal also rejected Spain's argument that the European Court of Justice's decision in *Achmea* equally applied to the ECT and held that the decision was inapposite as precedent for the present proceeding.[37] Cube and Demeter add that the Tribunal's findings are supported by at least 27 ECT tribunals that have faced the same *intra*-EU objection under the ECT and that have all unanimously rejected the objection.[38]

22. Cube and Demeter also contend that the EC's arguments on State Aid are groundless as no determination has ever been made concerning Spain's original incentives regimes for renewable energy investments and their incompatibility with State Aid.[39]

23. Cube and Demeter further object to Spain's request that the EC be allowed to file a submission on a stay of enforcement of the Award as the Parties have addressed that issue at great length. According to Cube and Demeter, the Commission's intervention at this stage with regard to that issue would create a significant disruption of the proceeding.[40]

24. Based on the above, Cube and Demeter request that the Committee deny the Commission's request to intervene or participate as an expert.[41] Cube and Demeter, however, request that should the Committee admit the EC's Application, the

---

[33] *Id.*; Respondents' Comments, p. 8.
[34] Respondents' Observations, p. 5.
[35] *Id.*, pp. 6-9.
[36] *Id.*, p. 6.
[37] *Id.*
[38] *Id.*, pp. 6-7.
[39] *Id.*, p. 8.
[40] Respondents' Comments, p. 6.
[41] Respondents' Observations, p. 10.

Committee should implement restrictions to safeguard Cube's and Demeter's rights, including: (i) limiting the EC's involvement to a single submission that is narrow in scope and length; (ii) refusing the EC access to the case file; (iii) rejecting the Commission's request to attend any hearing in this proceeding; and (iv) requiring the EC to post security for the additional costs imposed upon Cube and Demeter as a result of the EC's intervention, or alternatively to provide an undertaking to pay these added costs.[42]

## IV. THE COMMITTEE'S ANALYSIS

### A. The Applicable Legal Standard

25. As stated above, the Commission seeks to intervene in this annulment proceeding on three points and bases its Application upon Rule 37(2) of the Arbitration Rules.

26. Pursuant to Rule 53 of the Arbitration Rules, the above-mentioned provision applies, *mutatis mutandis*, to the present annulment proceeding.

27. In their submissions, both Spain and Cube and Demeter agree that Rule 37(2) sets the applicable standard to determine the admissibility of the EC's Application.

28. As an alternative to its request to be admitted as a non-disputing party, the Commission proposed the possibility that it be invited as expert witness.[43] Cube and Demeter have objected stating that this would not provide the Committee with an independent and disinterested view of EU law.[44] Spain has not commented on this alternative request, a fact that Cube and Demeter argue renders their objection on this point uncontested.[45]

29. The Committee notes, however, that the Commission's alternative request lacks a specific legal basis. Consequently, the Committee will consider it within the general procedural framework of these proceedings and in particular Rule 34 (which sets forth the general principles relating to evidence), Rule 35 (which addresses the examination of witnesses and experts), and Rule 36 (dealing with witnesses and experts) of the

---

[42] *Id.*
[43] Application, ¶ 21.
[44] Respondents' Observations, p. 9.
[45] Respondents' Comments, p. 1.

Arbitration Rules. While the legal bases may be different, the primary and alternative request cannot be assessed in isolation, and consequently they are addressed in order in the section that follows.

**B.     The EC's Application to Intervene Pursuant to Rule 37(2) of the Arbitration Rules or as an Expert**

30.  Rule 37(2) of the Arbitration Rules provides for the opportunity for a non-disputing party to intervene. In principle, that opportunity exists equally in annulment proceedings (see Rule 53 of the Arbitration Rules providing that the provisions of these rules apply *mutatis mutandis* to a procedure for the annulment of an award).

31.  Nevertheless, in deciding whether or not to allow a third party to intervene, the Committee must be mindful of the nature and scope of the present proceeding. Namely, a request for annulment may only be made on the basis of the specific grounds set out in Article 52 of the ICSID Convention, and the Committee may not engage in a broader review of the merits of the award. Nor may it substitute its views for those of the tribunal that rendered the award.[46] Consequently, the Committee should adopt procedures commensurate with the nature and scope of an annulment proceeding.

32.  These limitations are equally relevant in so far as the Commission's request to intervene extends to the question of a stay of the enforcement of the Award. In support of its request to intervene in this respect, the Commission argues that pursuant to TFEU Article 108(3), Spain may not pay the award, and if Cube and Demeter were to seek to enforce the Award "they would act in violation of their obligations under international law,"[47] and if the "Committee was to refuse to grant an unconditional stay on enforcement of the Award, it would equally violated [sic] its obligations under international law."[48]

---

[46] Hi-Taek Shin, *Annulment*, *in* BUILDING INTERNATIONAL INVESTMENT LAW: THE FIRST 50 YEARS OF ICSID 699, 700 (Meg Kinnear et al. eds.), **Respondents' Annex CL-260**.
[47] Application ¶ 52.
[48] *Id*.

33. The Commission's arguments on the stay of enforcement give rise to considerations of procedure and substance. As to procedure, the Committee considers that the Parties agreed on a timeline for the annulment proceeding, including a submission schedule in relation to the stay of enforcement and providing for a decision by the Committee on the stay enforcement to be issued by 17 April 2020.[49] The Parties have not addressed the impact, if any, of the Commission's request to intervene on the procedural calendar, and notably neither has requested any extension thereof. In so far as it supports the request for intervention, it would have been up to Spain to consider the procedural implications of the Commission's request. And as will be discussed below, precisely because the broad and profound nature of the putative intervention, the procedural consequences of an intervention in the form and shape proposed by the Commission and supported by Spain are likely to be considerable.

34. Concerning the substance and scope of the Commission's request to intervene, its argument, referred to in paragraph 32 above, highlights the fact that an analysis and evaluation of the request would require addressing fundamental issues effectively requiring consideration of many, if not all, of the arguments made and expected to be made in the context of this annulment proceeding.

35. With this in mind, the Committee emphasizes that its decision as to whether or not to permit the intervention requested by the EC pursuant to Rule 37 of the Arbitration Rules is not and should not foreshadow a decision on the stay of enforcement proceedings. The present decision is, as it should be, confined to the EC's request to intervene. In the context of stay proceedings, "any discussion on the merits and on the chances of annulment of the Award would be misplaced."[50] This limitation applies *a fortiori* to the present decision on the request to intervene in the annulment proceeding and to allow the intervener to make a submission in relation to the stay.

36. Furthermore, the argument of Spain that the issues raised by the Commission "go to the very core of the grounds for annulment invoked in this proceeding,"[51] if anything,

---

[49] Procedural Order No.1, Annex A – Procedural Calendar.
[50] *Patrick Mitchell v. Democratic Republic of the Congo*, ICSID Case No. ARB/99/7, Decision on the Stay of Enforcement of the Award, 30 November 2004, ¶ 26, **Spain's Annex 048**.
[51] Spain's Observations, ¶ 20.

9

underlines the point that allowing the Commission to intervene at this stage would not only disrupt the proceeding; it would fail to assist the Committee. It is precisely because this is not the time or place to engage in a comprehensive review of the merits that a non-disputing party intervention is not of assistance to the Committee. Pursuant to Rule 37(2) of the Arbitration Rules, the Committee should be persuaded that the non-disputing party's submission would assist the Committee and the Committee is of the view that, given all of the submissions on this issue, this threshold has not been met.

37. Consequently, both in terms of procedural and substantive impact, the Committee finds that the request for intervention by the Commission must be rejected.

38. It would be premature to decide definitively now whether the intervention of the Commission in some capacity at some stage would assist the Committee in the determination of factual and legal issues related to the proceeding by bringing a perspective, particular knowledge or insight that is different from that of the disputing Parties. While this may risk suggesting that an intervention at a later stage is conceivable, the Committee notes the following.

39. Spain argues that the Commission has a significant interest in the proceeding "as it affects an issue of general interest like the application of the ECT, signed by the EU and its Members States, within its territory and in the matter of State Aid regulations, so linked to the very roots of the European Union and its fundamental freedoms" and the Commission's interest in the present proceeding is unquestionable, "not only because of its general role as the guardian of the EU Treaties, but also because the effective application and enforcement of its State Aid Decision is at stake in this proceeding."[52] At the same time, Spain has argued that the Commission should be allowed to intervene because it is "endowed with the most absolute independence" as recognized by Article 245 of the TFEU.[53]

40. Without expressing a view on these statements, the Committee notes that, notwithstanding Spain's assertions, the Commission's perspective is difficult to align

---

[52] *Id.*, ¶¶ 26, 29.
[53] *Id.*, ¶¶ 17-18.

with the alternative request made to create a role for the Commission as an (independent) expert. Spain has not clarified whether it supports this alternative request, and so far as it does; nor does it express a view whether the Commission's putative role as expert would be as party expert or the Committee appointed expert.

41. In this light, the Committee recalls that based on the Parties' agreement, the Committee confirmed in paragraph 15.5 of Procedural Order No.1 that "[t]he Parties shall include all of the evidence on which they intend to rely, including […] expert opinions or reports […]." Subject to the structure and guidance of the ICSID Convention and the Arbitration Rules, and in particular Rules 34-36, it is the Parties' prerogative to submit the evidence they intend to rely on, as referred to in paragraph 15.5 of Procedural Order No. 1. The reference to *mutatis mutandis* in Rule 53 of the Arbitration Rules reflects that the powers of the Committee, while mirroring those of a tribunal, are commensurate with the nature of the annulment proceedings, and should be applied in accordance with the powers accorded to annulment committees by the Convention and the Arbitration Rules.

42. In this case, the Commission has not specified in which capacity it would suggest it could or should be involved as expert, and the Parties have not commented on the procedural framework for such involvement either.

43. For any expert's testimony to be of assistance to the Committee, it would have to reflect an independent and impartial view. However, precisely because of the critical and extensive role of the Commission in the EU legal architecture, it is difficult to square this roll with the notion of the Commission as independent in this dispute.

44. While the Committee does not wish to pre-empt the presentation of evidence by the Parties pursuant to Procedural Order No. 1 and the Arbitration Rules, and while equally, it cannot exclude the possibility that at some point in time it, on its own motion or at the request of the Parties may wish to seek the appointment of an expert, the Committee sees no basis for allowing the Commission at this stage to become involved in this proceeding as expert.

11

45. Consequently, the Committee also rejects the alternative request that the Commission be invited as expert witness.

## V.   DECISION

46. Having considered the Commission's Application and the Parties' submissions, and for the reasons stated above, the Committee at this stage:

    (a) rejects the EC's Application;

    (b) rejects the EC's alternative request that it be invited as an expert witness; and

    (c) reserves the issue of costs on this Application to a further order or decision.

_____
Mr. Timothy J. Feighery
Member of the *ad hoc* Committee

_____
Mr. Álvaro Castellanos Howell
Member of the *ad hoc* Committee

_____
Prof. Dr. Jacomijn van Haersolte-van Hof
President of the *ad hoc* Committee