**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CUBE INFRASTRUCTURE FUND SICAV**, *et al.*, <br><br> Plaintiffs, <br><br> **v.** <br><br> **KINGDOM OF SPAIN,** <br><br> Defendant. | Civil Action No. <br> 20-cv-1708-EGS-MAU |

## REPORT AND RECOMMENDATION

Plaintiffs Cube Infrastructure Fund SICAV, Cube Infrastructure Managers S.A., Cube Energy S.C.A., Demeter Investment Managers S.A.[1] and Demeter 2 FPCI (collectively "Plaintiffs"), bring this action to confirm an arbitration award entered in their favor against Defendant the Kingdom of Spain ("Spain").  Plaintiffs initiated the arbitration under the Energy Charter Treaty ("ECT"), which Spain signed twenty-eight years ago.  Under that treaty, Spain gave its "unconditional consent" to arbitrate any covered dispute pursuant to the International Convention on the Settlement of Investment Disputes between States and Nationals of Other States ("ICSID").

Spain now claims, as it has in at least ten other cases in this district[2], that this Court lacks jurisdiction to confirm the award that an ICSID tribunal has rendered against the sovereign in this

---

[1]     Demeter Investment Managers S.A. was previously named Demeter Partners S.A.  *See* ECF Nos. 60-62.

[2]     Spain has made similar arguments in: *Novenergia II – Energy & Env't (SCA) v. Kingdom of Spain*, No. 18-cv-1148 (TSC); *NextEra Energy Global Holdings B.V. v. Kingdom of Spain*, No. 19-cv-1618 (TSC); *9REN Holding S.A.R.L. v. Kingdom of Spain*, No. 19-cv-1871 (TSC); *Infrastructure Servs. Lux. S.A.R.L. v. Kingdom of Spain*, No. 18-cv-1753 (EGS/MAU); *BayWa r.e. AG v. Kingdom of Spain*, 22-cv-02403 (APM); *Hydro Energy 1 S.à.r.l. v. Kingdom of Spain*, 21-cv-02463 (RJL); *InfraRed Env't Infrastructure GP Ltd. v. Kingdom of Spain*, 20-cv-00817 (JDB);

case.  Spain's principal argument is that this Court lacks subject matter jurisdiction because there was never an agreement to arbitrate with Plaintiffs.  The European Commission, appearing as amicus curiae, also advocates against confirming the award.  *See* ECF No. 46.

Before this Court for a Report and Recommendation are Spain's Motion to Dismiss and Plaintiffs' Cross-Motion for Judgment on the Pleadings, or in the alternative, for Summary Judgment.  ECF Nos. 43, 54.  For the following reasons, this Court recommends that Spain's Motion to Dismiss be **DENIED** and Plaintiffs' Motion be **DENIED IN PART** and **GRANTED IN PART**.

## I.     BACKGROUND

### 1.   *The ICSID Convention of 1965 and Procedures for Settlement of Disputes*

The ICSID provides a legal framework and procedural mechanisms to resolve disputes between private investors and governments.  *See* Convention on the Settlement of Investment Disputes between States and Nationals of Other States Preamble, Mar. 18, 1965, T.I.A.S. No. 6090, 17 U.S.T. 1270.  Signed by more than 150 countries, the ICSID is "a multilateral treaty aimed at encouraging and facilitating private foreign investment in developing countries."  *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 100 (2d Cir. 2017).  The ICSID convenes arbitration panels "to adjudicate disputes between international investors and host governments in 'Contracting States.'"  *Id.* at 101.  A Contracting State is a country whose government has ratified the ICSID Convention under that country's domestic law.  ICSID arts. 68-69.  The United States, Luxembourg, and France are Contracting States to the ICSID Convention.

---

*RREEF Infrastructure (G.P.) Ltd. v. Kingdom of Spain*, 19-cv-03783 (CJN); *RWE Renewables GMBH v. Kingdom of Spain*, 21-cv-03232 (JMC); and *Watkins Holdings S.à.r.l. v. Spain*, 20-cv-01081 (TFH).

*Database of ICSID Member States*, International Centre for Settlement of Investment Disputes, https://icsid.worldbank.org/about/member-states/database-of-member-states (last visited Mar. 31, 2023).

"Any Contracting State or any national of a Contracting State" may ask the ICSID to convene an arbitral tribunal to resolve a dispute.  ICSID art. 36.  The tribunal is tasked with adjudicating the dispute and issuing a written award that addresses "every question submitted to the Tribunal," and "state the reasons upon which [the award] is based." *Id.* art. 48(3).  Under the ICSID, "[t]he Tribunal shall be the judge of its own competence" and shall consider "[a]ny objection by a party to the dispute that . . . [a] dispute is not within the jurisdiction of the [ICSID]." *Id.* art. 41(1), (2).  A party may challenge the tribunal's decision consistent with the procedures set forth in the Convention.  *See id.* arts. 51-52.

Significantly, "[e]ither party may request annulment of the award" based on five enumerated grounds: (1) that the Tribunal was not properly constituted; (2) that the Tribunal has manifestly exceeded its powers; (3) that there was corruption on the part of a member of the Tribunal; (4) that there has been a serious departure from a fundamental rule of procedure; or (5) that the award has failed to state the reasons on which it is based.  *Id.* art. 52.  Once a party seeks annulment of an award, an Annulment Committee is formed to consider the party's objections.  *Id.*

As the signatories to the ICSID agreed, domestic courts of member countries lack the authority to review the merits of an ICSID tribunal's decision.  In fact, it is quite the opposite.  Per the text of the Convention, Contracting States agreed that the ICSID must enforce arbitral awards.  ICSID art. 53(1) ("The award shall be binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in this Convention.").  Moreover, Article 54(1) of the Convention provides: "[e]ach Contracting State shall recognize an award rendered pursuant

to this Convention *as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State*." *Id.* art. 54(1) (emphasis added). Contracting States with a federal system of government "may enforce such an award in or through [their] federal courts and may provide that such courts shall treat the award as if it were a final judgment of the courts of a constituent state." *Id.*

Accordingly, the United States Congress passed the Convention on the Settlement of Investment Disputes Act of 1966. *See* Convention on the Settlement of Investment Disputes Act of 1966, Pub. L. No. 89-532, 80 Stat. 334 (1966) (codified at 22 U.S.C. §§ 1650 and 1650a). Section 3 of the Act addresses the enforcement of ICSID arbitration awards and provides: "[t]he pecuniary obligations imposed by [an ICSID] award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a(a). As such, federal courts are vested with "exclusive jurisdiction over actions and proceedings" to enforce ICSID awards. *Id.* § 1650a(b).

### 2. *The Energy Charter Treaty of 1994*

The Energy Charter Treaty ("ECT") is a multinational investment treaty that provides a framework to promote cross-border cooperation in energy markets. ECF No. 1-4. Spain signed the ECT on December 17, 1994, ratified it on December 11, 1997, and the treaty took effect on April 16, 1998. *See Contracting Parties and Signatories*, *Spain*, International Energy Charter, https://www.energychartertreaty.org/treaty/contracting-parties-and-signatories/spain/ (last visited Mar. 30, 2023).[3] At the time of this underlying dispute, the European Union ("EU"), twenty-seven

---

[3]    Luxembourg signed the ECT on December 17, 1994, ratified it on February 7, 1997, and the treaty took effect on April 16, 1998. *See Contracting Parties and Signatories*, *Luxembourg*, International Energy Charter, https://www.energychartertreaty.org/treaty/contracting-parties-and-signatories/luxembourg/ (last visited Mar. 31, 2023). France signed the ECT on December 17, 1994, ratified it on September 1, 1999, and the treaty took effect on December 27, 1999. *See*

EU Member States, and twenty-six non-EU States had signed on to the ECT.  Contracting Parties agreed to "encourage and create stable, equitable, favourable and transparent conditions for Investors of other Contracting Parties to make Investments in its Area" and "accord . . . fair and equitable treatment" to the investments of other Contracting Parties' investors.  ECT art. 10(1).  In the event that any dispute arose, the ECT provided various dispute resolution mechanisms, including international arbitration under the ICSID.  *Id.* arts. 26(3)(a), 26(4)(a)-(c) (providing the investor with the choice to proceed with arbitration under the ICSID, a tribunal under the Arbitration Rules of the United Nations Commission on International Trade Law, or the Arbitration Institute of the Stockholm Chamber of Commerce).  Under Article 26(3)(a), each Contracting Party gave "its *unconditional consent to the submission of a dispute to international arbitration . . . in accordance with the provisions of this Article*."  *Id.* art. 26(3)(a) (emphasis added).

To initiate arbitration, investors only needed to provide a written Request for Arbitration to the Secretary General under the ICSID to proceed before a tribunal.  *Id.* art. 26(4)(a)(i); ICSID art. 36 (listing the formal requirements to initiate an arbitration proceeding under the ICSID).  The investors' written request triggered the relevant ICSID arbitral provisions and served as notice to the other Contracting Party.  ECT art 26(5)(a)(i).  Like the ICSID, the ECT bound the Contracting Party and investors to the arbitral decision.  *Id.* art. 26(8) ("The awards of arbitration, which may include an award of interest, shall be final and binding upon the parties to the dispute.").

---

*Contracting Parties and Signatories*, *France*, International Energy Charter, https://www.energychartertreaty.org/treaty/contracting-parties-and-signatories/France/ (last visited Mar. 31, 2023).

3.   *Plaintiffs' Investments in Spain's Energy Sector*

Plaintiffs are European "investment and private equity funds" that invest in green energy projects.  ECF No. 1 ¶ 8.  Cube Infrastructure Fund SICAV, Cube Infrastructure Managers S.A., and Cube Energy S.C.A. are established under the laws of Luxembourg.  *Id.* ¶ 2.  Demeter Investment Managers S.A. and Demeter 2 FPCI are organized under the laws of France.  *Id.* ¶ 3.  Beginning in 2004, Spain established a special incentive regime "to encourage the development of more renewable energy facilities in order to help Spain achieve its renewable energy goals." ECF No. 53 at 11.  The incentives encouraged investment in photovoltaic and hydroelectric electricity generation and stabilized "the level of prices that would be paid for [energy facilities'] electricity . . .  over time."  ECF No. 1-2 at 66.  Plaintiffs relied on this development program because "uncertainty as to the level and stability of future prices [of any renewable energy produced] is a major deterrent to investment in the renewable energy sector."  *Id.* at 66-67.  In 2008, Plaintiffs' funds invested in three green-energy facilities in Spain.  *See* ECF No. 1 ¶ 15.  In approximately 2011 to 2012, Plaintiffs formed a partnership and acquired the rights to sixteen additional hydro-power facilities, also in Spain.  *See id.* ¶ 18.

In 2010, Spain ended the incentives, and, in 2013, enacted the "New Regulatory Regime." ECF No. 53 at 12.  Spain's New Regulatory Regime "replaced the existing incentive schemes with a fixed reasonable rate of return and adversely affected the financial viability of the projects that Plaintiffs acquired."  *Id.*  Because Spain's regulatory change allegedly caused Plaintiffs financial harm, they sought to arbitrate the dispute and initiated an action under Article 26 of the ECT on April 16, 2015.  ECF No. 1 ¶¶ 8, 32.  Plaintiffs claimed Spain's decision to lower subsidies for renewables in the wake of a global recession in 2008 violated several provisions of the ECT.  *Id.* ¶ 21.

4. *Proceedings Before the Tribunal*

Plaintiffs initiated the underlying arbitration by serving a formal Request for Arbitration on Spain in accordance with Article 36 of the ICSID Convention. *See* ECF No. 1-5. The ICSID Convention and the accompanying Rules of Procedure for the Institution of Conciliation and Arbitration Proceedings governed the Tribunal, which sat in Washington, D.C. ECF No. 1-2 ¶¶ 7, 146. In October 2017, the Tribunal held a five-day hearing on jurisdiction and merits. *Id.* ¶ 38. Spain, represented by its Ministry of Justice, participated fully in the proceedings and made a number of jurisdictional challenges to the Tribunal, including that the ECT does not apply to intra-EU disputes and that the Tribunal should apply the law of the European Union instead of international law. *Id.* ¶¶ 76, 78.

After the hearing, the Tribunal accepted argument on the effect of three recent opinions from the Court of Justice of the European Union ("CJEU"): *Slovak Republic v. Achmea BV*; *Novenergia v. Kingdom of Spain*; and *Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*. *Id.* ¶¶ 52, 58, 59, 61. As to the *Achmea* opinion specifically, the Tribunal requested that the parties "comment on the implications of th[at] Judgment, in particular (but without limitation) in relation to the question of the Tribunal's jurisdiction, and the question of the enforceability of any award that might be made…" *Id.* ¶ 80. On October 31, 2018, the European Commission filed an application to intervene on Spain's behalf as a "non-disputing party." *Id.* ¶ 62. The Tribunal, however, denied the Commission's application, finding that it would "significantly disrupt the proceedings." *Id.* ¶ 63.

Before the Tribunal, Spain primarily argued, as it does here that, based on the CJEU's ruling in *Achmea*, the Tribunal lacked jurisdiction to hear this dispute. *See id.* ¶ 89 ("In order to preserve the autonomy of the EU legal order, it is therefore a requirement to deny jurisdiction to

any arbitral body that would have to rule, in proceedings before it, on matters of EU law."). According to Spain, because Article 26 of the ECT does not apply to intra-EU disputes, or those between an EU Member State and nationals of another EU Member State, the Tribunal exceeded the scope of its authority to hear the underlying arbitration. *Id.* ¶¶ 83, 95. Plaintiffs countered that the ECT clearly applies to the underlying dispute and precludes the application of separate provisions for EU Member States and nationals of other EU Member States. *Id.* ¶¶ 102, 103, 113. In fact, Plaintiffs noted that within the ECT, there is no explicit provision carving out disputes that arise between an EU Member State and nationals of another EU Member State. *Id.* ¶¶ 112, 113. Plaintiffs further dismissed the relevance of the *Achmea* judgment, arguing that the Tribunal's jurisdiction under the ECT is unaffected. *Id.* ¶ 113 ("Specific treaties like the EU regime cannot prevail against the will of the parties to the ECT to confer exclusive jurisdictional authority to the institutions under the ECT."). According to the Plaintiffs, the Tribunal "had no other mandate than faithfully to apply the rules laid down in the ECT." *Id.* ¶ 116.

On February 19, 2019, the Tribunal issued a Decision on Jurisdiction, Liability, and Partial Decision on Quantum. *Id.* Applying international law, the Tribunal determined it had jurisdiction under the ECT. *Id.* ¶ 130 ("Within the system of international law, EU law does not have supremacy, and has no hierarchical priority over the laws of non-Member States, or over rules of international law, including the ECT."). The Tribunal clarified that it was not applying EU law to the dispute. *Id.* ¶ 132 ("Nothing in this Decision does seek to derogate from any provisions of EU law, and the Tribunal does not construe any provision of EU law so as to derogate from the principles . . . or the right to dispute settlement set out in the ECT."); *id.* ¶ 160 ("This Tribunal does not have to apply, or take a decision on any question of, Spanish law or EU law . . . Spanish

law and EU law are relevant only as facts in the light of which the rights and duties of the Parties under the ECT and international law are to be determined.").

On the merits, the Tribunal decided in favor of Plaintiffs.  *See e.g.*, *id.* ¶ 360 ("[A]t the time that the Claimants made their investments in the hydro facilities in Spain, they were entitled to rely on the expectation that a regime based on fixed tariffs applicable to the actual output of each facility, up to its reasonable planned capacity, would remain applicable to its hydro facilities for a period of approximately the same order as that provided for [under the previous investment incentives].").  The Tribunal issued an Award on July 15, 2019, ordering Spain to pay, among other things, 33.7 € plus interest and costs (1,037,773.63 € in costs and expenses).  *See id.*  ¶¶ 542-548.

### 5.  *Spain Attempts to Annul the Award*

On November 12, 2019, Spain filed an application with the ICSID for an annulment of the Award.  ECF No. 33-1 ¶ 9.  Pursuant to Spain's application and Article 52 of the ICSID, the Secretary-General formed an Annulment Committee ("Committee").  *Id.* ¶ 11.  The Annulment Committee heard argument on Spain's petition on March 16 and 17, 2021.  Spain argued that the Tribunal: manifestly exceeded its powers because it lacked jurisdiction to hear this dispute under EU law; failed to state reasons for its decision in finding that EU law did not apply to the dispute; and engaged in a "serious departure from a fundamental rule of procedure" by denying the European Commission's request to intervene in the arbitration proceeding.  *Id.* ¶¶ 75, 99, 384.

The Annulment Committee denied Spain's petition on March 28, 2022.  ECF No. 33-1. In its decision, the Committee refused to entertain Spain's renewed attempts to dispute the jurisdiction of the Tribunal, noting that it was not an appellate body.  *Id.* ¶ 233.  Even so, the Committee acknowledged that the Tribunal fully considered the "critical issue" of the intra-EU

nature of the dispute and did not manifestly exceed its powers.  *Id.* ¶¶ 233-234; *see also id.* ¶¶ 218-219 (*"[T]here can be no doubt that the Tribunal considered the Achmea judgment and its potential implications…The Tribunal distinguished the judgment carefully and at some length*.") (emphasis added).  The Committee rejected Spain's additional challenges, finding that the Tribunal properly addressed "applicable law . . . in relation to jurisdiction", *id.* ¶ 330, and did not depart from any fundamental rules of procedure.  *Id.* ¶ 471.  On June 23, 2020, while the annulment proceeding was pending, Plaintiffs filed this Complaint to enforce the Award.

## II.    LEGAL STANDARDS

Spain moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) on the basis that this Court lacks subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"). 28 U.S.C. §§ 1605-1607.  On a Rule 12(b)(1) challenge, the court may look to the complaint as well as any undisputed facts in the record and any disputed facts that the court has resolved.  *See Herbert v. Nat'l Acad. of Sci.*, 974 F.2d 192, 197 (D.C. Cir. 1992) (citations omitted).  Spain also seeks to dismiss under Rule 12(b)(6), raising the affirmative defense of the foreign sovereign compulsion doctrine.  Under Rule 12(b)(6), the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court may grant a motion to dismiss on the basis of an affirmative defense under Rule 12(b)(6) when the "facts that give rise to the defense are clear from the face of the complaint." *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998); *see also Kim v. United States*, 632 F.3d 713, 719 (D.C. Cir. 2011).

Plaintiffs move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing that this Court has subject matter jurisdiction and that this Court is precluded from entertaining Spain's merits defenses.  Federal Rule of Civil Procedure 12(c) provides that: "[a]fter

the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Judgment on the pleadings is appropriate "if the moving party demonstrates that no material fact is in dispute and that it is 'entitled to judgment as a matter of law.'" *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C. Cir. 1992) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988)). The moving party must show that judgment on the pleadings is warranted, even though the "court evaluating the 12(c) motion will accept as true the allegations in the opponent's pleadings, and as false all controverted assertions of the movant." *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n v. Liberty Mar. Corp.*, 933 F.3d 751, 761 (D.C. Cir. 2019) (quoting *Haynesworth v. Miller*, 820 F.2d 1245, 1249 n.11 (D.C. Cir. 1987)).

In the alternative, Plaintiffs move for summary judgment pursuant to Federal Rule of Civil Procedure 56. Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013) (quoting Fed. R. Civ. P. 56(c)(2)). A "material" fact is one capable of affecting the substantive outcome of the litigation; factual disputes that are "irrelevant or unnecessary" do not affect the summary judgment determination. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the nonmovant. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). The court's inquiry is essentially "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

The FSIA is "the sole basis for obtaining jurisdiction over a foreign state in the courts of the [United States]." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 794 F.3d 99, 101 (D.C. Cir. 2015) (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989)). Pursuant to the FSIA, "a foreign state is presumptively immune from the jurisdiction of the United States courts[,] unless a specified exception applies." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). Two FSIA exceptions are relevant here: the waiver exception, 28 U.S.C. § 1605(a)(1), and the arbitration exception, *id.* § 1605(a)(6). Under the "waiver" exception courts have jurisdiction "in any case . . . in which the foreign state has waived its immunity either explicitly or by implication." 28 U.S.C. § 1605(a)(1).[4]  The FSIA's arbitration exception provides:

> A foreign state shall not be immune from the jurisdiction of the courts of the United States   or of the States in any case . . . in which the action is brought . . . to confirm an award made pursuant to . . . an agreement to arbitrate, if . . . the agreement or award is or may be governed by a treaty or other international agreement in force . . . calling for the recognition and enforcement of arbitral awards.

28 U.S.C. § 1605(a)(6).

When a defendant challenges the factual basis for jurisdiction under the FSIA, the D.C. Circuit applies a burden-shifting framework.  *See Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 528 F.3d 934, 940 (D.C. Cir. 2008).  The plaintiff "bears the initial burden of supporting its claim that the FSIA exception applies."  *Chevron Corp. v. Ecuador*, 795 F.3d 200, 204 (D.C.

---

[4]     In a recent case, the D.C. Circuit declined to address the availability of the waiver exception to the FSIA under a related arbitration treaty finding that "[g]iven . . . significant policy concerns and the ready applicability of the arbitration exception, we find it unnecessary to wade into the murky waters of the waiver exception." *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 27 F.4th 771, 775 n.3 (D.C. Cir. 2022).  Because this Court finds that the arbitration exception applies, it also need not dive in to the waiver exception.  *See id.*; *see also Nextera Energy Global Holdings B.V. v. Kingdom of Spain*, No. 19-cv-01618, 2023 WL 2016932, at *4 (D.D.C. Feb. 15, 2023) (declining to reach the question of whether the waiver exception applied because the court held it had subject matter jurisdiction under the arbitration exception to the FSIA).

Cir. 2015).  "[T]his is only a burden of production."  *Id.* (quoting *Chabad*, 528 F.3d at 940).  If a plaintiff meets its burden, then the "burden of persuasion rests with the foreign sovereign claiming immunity, which must establish the absence of the factual basis by a preponderance of the evidence."  *Id.* (same).

For the arbitration exception to apply, the court must make three jurisdictional findings: "(1) a foreign state has agreed to arbitrate; (2) there is an award based on that agreement; and (3) the award is governed by a treaty signed by the United States calling for the recognition and enforcement of arbitral awards."  *Chevron*, 795 F.3d at 204; *see also LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 877 (D.C. Cir. 2021) ("[T]he existence of an arbitration agreement, an arbitration award and a treaty governing the award are all jurisdictional facts that must be established."); *Process & Indus. Devs.*, 27 F.4th at 776 (following the same standard).

## III.     DISCUSSION

In seeking to invalidate the Award, Spain argues that: 1) this Court lacks subject matter jurisdiction under the FSIA; 2) the foreign sovereign compulsion doctrine prevents enforcement of the Award; 3) the Award is not entitled to full faith and credit; and 4) the Complaint should be dismissed under the doctrine of *forum non conveniens*.  ECF No. 43 at 8-38; ECF No. 56 at 6-22.  Plaintiffs argue that this Court has subject matter jurisdiction under the arbitration and waiver exceptions to the FSIA and that, in its limited role, this Court cannot consider Spain's merits arguments.  ECF No. 53 at 10-11.  Rather, as Plaintiffs claim, this Court must enforce the award because Plaintiffs have met the elements required to enforce an ICSID award.  *See* ECF No. 53 at 27-28.

Although Spain raises several arguments to prevent enforcement of the Award, the crux of its challenge is that this Court lacks jurisdiction because there was never a valid agreement to

arbitrate with Plaintiffs.  *See* ECF No. 43-1 at 8-9.   If there is an agreement, then the arbitration exception under the FSIA applies, and all that remains is for this Court to ensure that the Award is entitled to full faith and credit.  *See* 22 U.S.C. § 1650a(a); ICSID art. 54(1).

### A.      Spain's Challenge to Subject Matter Jurisdiction Under the FSIA

Plaintiffs have made a prima facie showing of the three required jurisdictional facts to invoke the FSIA arbitration exception: 1) the Energy Charter Treaty which governs the arbitration, ECF No. 1-4 (ECT); 2) the formal request for arbitration pursuant to Article 26 of the ECT, in which Spain gave its "unconditional consent" to arbitrate a dispute such as this one, ECF No. 1-5 (notice of arbitration); and 3) the ICSID Tribunal's Award.  ECF No. 1-1 (ICSID Award).  *See Process & Indus. Devs.*, 27 F.4th at 776; *see also Stileks*, 985 F.3d at 877; *Chevron*, 795 F.3d at 204.

Plaintiffs' production of these jurisdictional facts creates a presumption that the treaty and notice of arbitration "constituted an agreement to arbitrate."  *Chevron*, 795 F.3d at 205.  As such, Spain has a "burden of persuasion" to rebut that presumption "by a preponderance of the evidence."  *Id.* at 204.

#### 1.   *The Achmea Decision and Spain's Agreement to Arbitrate*

Spain does not dispute the existence of the ECT or that it is a signatory of that treaty.  Nor can Spain challenge that, on its face, Article 26 of the ECT provides for disputes between a Contracting Party and investors of another Contracting Party to be resolved before an ICSID tribunal.  ECT art. 26.  Finally, Spain does not contest the existence of an arbitral award in this case.  ECF No. 43-1 at 10.  Rather, Spain argues that any agreement to arbitrate with Plaintiffs was void *ab initio* under EU law and, as such, the arbitration exception to the FSIA does not apply. ECF No. 43-1 at 24-25 ("There was no agreement to arbitrate because EU law precludes Spain

from making an offer to arbitrate matters that may require the interpretation or application of EU

law…").  Spain argues that recent decisions from the Court of Justice of the European Union[5]

foreclose Spain from agreeing to arbitrate under a treaty that removes jurisdiction from the courts

of EU Member States.  *Id.*

Spain relies principally on the CJEU's 2018 decision in *Slovak Republic v. Achmea B.V.*,

Case No. C-284/16 (Mar. 6, 2018) ("*Achmea*").  In that case, the CJEU addressed the relationship

between international arbitration agreements and the Treaty on the Functioning of the European

Union ("TFEU"), "which sets forth the EU's authority to legislate and key principles of EU law."

*Micula v. Gov't of Romania*, 404 F. Supp. 3d 265, 278 (D.D.C. 2019), *aff'd*, 805 F. App'x 1 (D.C.

Cir. 2020).  In *Achmea*, the CJEU held that:

> Articles 267 and 344 [of the] TFEU must be interpreted as
> precluding a provision in an international agreement concluded
> between Member States . . . under which an investor from one of
> those Member States may, in the event of a dispute concerning
> investments in the other Member State, bring proceedings against
> the latter Member State before an arbitral tribunal whose jurisdiction
> that Member State has undertaken to accept.

*Achmea* ¶ 60.  Apparently focusing on "the autonomy of EU law," *Achmea* invalidated arbitration

agreements that would "call[] upon [an] arbitral tribunal to interpret or apply EU law . . . not

subject to review by a court or tribunal within the EU's judicial system."  *Micula*, 404 F. Supp. 3d

at 279.  In its 2021 decision in *Republic of Moldova v. Komstroy*, Case C-741/19 (Sept. 2, 2021),

the CJEU held that the *Achmea* decision applied to multinational treaties, including ECT Article

26.

---

[5]     According to Spain, the CJEU is the "supreme judicial authority on EU law."  ECF No.
43-1 at 11.

Spain argues that this Court is bound to accept and defer to the CJEU's decisions given principles of international comity.  ECF No. 43-1 at 26.   As Spain argues, because international arbitral panels might interpret and apply EU law outside the review of a Member State court, *Achmea* and *Komstroy* render any such international arbitration agreement between Member States void *ab initio*.  *See id.* at 24-25.  In other words, because Spain claims *Achmea* and *Komstroy* apply retroactively, it "never had the ability to say 'yes'" to Plaintiffs' offer and the ICSID Tribunal never had the authority to arbitrate Plaintiffs' claim.  ECF No. 56 at 16.  Spain is essentially seeking a ruling from this Court that at best modifies, and at worst, nullifies, its treaty obligations under the ECT.  ECF No. 43-1 at 26.  If the Court accepts Spain's view, the "Award is unenforceable, and Spain is immune to the Court's jurisdiction."  *Id.* at 9.

 Plaintiffs argue that this Court's role in enforcing an arbitral award is limited.  ECF No. 53 at 28.  They further argue that Spain had a full and fair opportunity to litigate these jurisdictional challenges before the ICSID Tribunal and Annulment Committee.  *Id.* at 34-37.  Plaintiffs claim that the Court must defer to the findings of the Tribunal and Annulment Committee because the parties clearly and unmistakably delegated questions of arbitrability (*i.e.*, whether the Tribunal had jurisdiction and whether there was an agreement to arbitrate) to the Tribunal.  *Id.* at 34.  According to Plaintiffs, under this Circuit's precedent, the Court cannot conduct *de novo* determinations of arbitrability, including whether there was a valid agreement to arbitrate.  *Id.* at 32.  Plaintiffs argue that, even if the Court were to conduct its own analysis, both the ECT and ICSID unequivocally bind the parties to the result of the arbitration.  *Id.* at 34.  Any other conclusion would give EU Member States the "unilateral power to modify the ECT's plain language among themselves without obtaining the consent of all other Contracting Parties," while "retroactively stripping investors of their rights."  ECF No. 59 at 23, 26.

16

2. *This Court has Subject Matter Jurisdiction to Enforce the Award*

The first question is whether Spain's principal challenge to the Award is one that goes to the arbitrability of the dispute or to this Court's subject matter jurisdiction. *See* ECF No. 56 at 8-11; ECF No. 59 at 16-17.

In *Stileks*, Energoalliance, a Ukrainian energy provider, relied upon the ECT's arbitration clause to initiate a proceeding against Moldova before the United Nations Commission on International Trade Law ("UNCITRAL"). 985 F.3d at 875. Energoalliance sought to confirm an arbitration award in its favor in this Court. Moldova argued that U.S. courts lacked jurisdiction under the FSIA's arbitration exception because Energoalliance was not a qualifying investor under the ECT and, therefore, could not have validly invoked the ECT's arbitration clause. *Id.* at 875, 877-78. As Spain argues here, Moldova claimed that "the ECT did not give the arbitral tribunal jurisdiction of the dispute and thus the resulting award was not 'made pursuant to such an agreement to arbitrate.'" *Id.* at 877 (quoting 28 U.S.C. § 1605(a)(6)).

The D.C. Circuit rejected Moldova's argument and held that the question of whether there was an agreement to arbitrate is a question of arbitrability as opposed to a jurisdictional question under the FSIA. *Id.* at 878. As the Circuit noted, if "an agreement assigns the arbitrability determinations to an arbitrator, 'a court possesses no power to decide the arbitrability issue,' even if it thinks the argument for arbitrability is 'wholly groundless.'" *Id.* at 878 (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc*. 139 S. Ct. 524, 529 (2019)). Because Moldova agreed to assign arbitrability determinations to UNCITRAL by agreeing in the ECT that the "arbitral tribunal shall have the power to rule on its own jurisdiction," the court declined to reach Moldova's argument that Energoalliance was not a qualifying investor under the ECT. *Id.* at 878. Refusing to "delve

17

into the merits of Moldova's argument," the Circuit held that it was bound to defer to the arbitrability determinations of the tribunal.  *Id.* at 879.

The *Stileks* court relied on *Chevron Corp. v. Ecuador*, 795 F.3d 200, 205-06 (D.C. Cir. 2015), in concluding that "the arbitrability of a dispute is not a jurisdictional question under the FSIA."  985 F.3d at 878.  In that case, Ecuador argued that the FSIA required the court to make a *de novo* determination of whether Ecuador had agreed to arbitrate with Chevron.  *Chevron*, 795 F.3d at 205.  According to Ecuador, because it had never made such an agreement, the district court lacked jurisdiction under the FSIA.  *Id.*  The Circuit rejected Ecuador's argument, finding that it "conflate[d] the jurisdictional standard of the FSIA with the standard for review" for a merits-based jurisdictional challenge under the relevant arbitral body in that case.  *Id.*  As the court stated, in an arbitration enforcement action, the court's jurisdictional task is merely to "determine whether Ecuador had sufficiently rebutted the presumption that the [treaty] and Chevron's notice of arbitration constituted an agreement to arbitrate," and not to examine the merits claim.  *Id.*

Between *Stileks* and *Chevron*, the D.C. Circuit has spoken to the question at hand.  In a case such as this one, a party's challenge to the very existence of an agreement to arbitrate is a question of arbitrability, not one of jurisdiction under the FSIA.  Indeed, as the Circuit noted in *Stileks*: "[w]hether the ECT applies to the dispute and whether the tribunal had jurisdiction under the ECT are different ways of framing the same question," which is in this case a merits issue that goes to arbitrability.  *Id.* at 879; *see also Henry Schein*, 139 S. Ct. at 529 (finding as a question of arbitrability "whether the parties have agreed to arbitrate"); *Process & Indus. Devs.*, 27 F.4th at 776 ("As we have made clear, the *validity or enforceability* of an arbitral award is a merits question . . . thus [appellant's] argument is foreclosed . . . .") (emphasis added).

At least two other judges in this district have reached similar conclusions.  In *Tethyan Copper Co. Pty Ltd. v. Islamic Republic of Pakistan*, 590 F. Supp. 3d 262 (D.D.C. 2022) (McFadden, J.), an Australian mining company sought to confirm an ICSID arbitration award against Pakistan.  Under the relevant arbitration treaty, a referral to an arbitral body required written consent.  Pakistan argued that it had "never provided such written consent," and therefore had "never agreed to arbitrate at ICSID."  *Id.* at 273.  Following *Chevron* and *Stileks*, the court acknowledged that Tethyan made the requisite prima facie showing by providing "the Award, the Treaty, and its notice of arbitration."  *Id.*  This "create[d] a presumption that the treaty and notice of arbitration 'constituted an agreement to arbitrate.'"  *Id.* (quoting *Chevron*, 795 F.3d at 205).  The court rejected Pakistan's argument that the court should conduct a *de novo* review of whether there was, in fact, an agreement to arbitrate, holding "arbitrability does not affect the Court's jurisdiction [under the FSIA]" and "cannot defeat the presumption that Pakistan agreed to arbitrate with Tethyan."  *Id.* at 274.  Finding it had jurisdiction under FSIA, the court ultimately confirmed the award.

In *Nextera Energy Global Holdings B.V. v. Kingdom of Spain*, No. 19-cv-01618, 2023 WL 2016932 (D.D.C. Feb. 15, 2023) and *9REN Holding S.A.R.L. v. Kingdom of Spain*, No. 19-cv-01871, 2023 WL 2016933 (D.D.C. Feb. 15, 2023) (Chutkan, J.),[6] the court considered whether it had jurisdiction under the FSIA based on the exact challenge Spain raises in this case regarding the agreement to arbitrate.  *See e.g.*, *9REN*, 2023 WL 2016933, at *4 (arguing that there was no agreement to arbitrate under the ECT per relevant CJEU decisions, thereby nullifying the arbitral

---

[6]     Although the *Nextera* and *9REN* cases were before the court on motions for preliminary injunction, the analysis on whether the court had subject matter jurisdiction under the FSIA is applicable here given the court's obligation to first satisfy itself of its jurisdiction before turning to the motion for preliminary injunction.  *See e.g.*, *9REN*, 2023 WL 2016933, at *3-4; *Nextera*, 2023 WL 2016932, at *4-5.

panel's jurisdiction and rendering the award unenforceable); *Nextera*, 2023 WL 2016932, at *5 (same).

Relying principally on *Chevron*, *Stileks*, and *Tethyan*, the court held that Spain failed to rebut the presumption that an arbitration agreement existed. *9REN*, 2023 WL 2016933, at *6. As the court wrote, "*Chevron* and *Stileks* treat the argument that a party lacked a legal basis to enter an agreement as a question of arbitrability and therefore an issue of the award's merits. Spain thus cannot deploy that argument here as a backdoor challenge to FSIA jurisdiction." *Id.* (citations omitted).

Given the binding D.C. Circuit precedent and the persuasive cases from this district, this Court reaches the same result. Whether there was an agreement to arbitrate is a question of arbitrability that goes to the Award's merits. It is not a jurisdictional question for this Court under the FSIA.

The question remains whether the parties clearly and unmistakably delegated questions of arbitrability to the Tribunal. As stated above, the ECT provides that "each Contracting Party . . . gives its *unconditional consent* to the submission of a dispute to international arbitration or conciliation in accordance with the provisions of this Article." ECT art. 26(3) (emphasis added). Here, it was Plaintiffs' prerogative to choose to arbitrate under the ICSID Convention, and, as such, Spain cannot challenge the *choice* of the tribunal. *Id.* art. 26(4). The terms of the ICSID Convention are clear that "[t]he Tribunal *shall be the judge of its own competence" and shall consider "[a]ny objection by a party to the dispute that . . . [a] dispute is not within the jurisdiction of the [ICSID]*." ICSID art. 41(1) (emphasis added).[7] This Court holds that the ECT and ICSID,

---

[7]   In *Stileks*, the Circuit held that the relevant arbitral rules under UNCITRAL reflected clear and unmistakable evidence that the parties agreed to delegate arbitrability to the tribunal. 985 F.3d at 879. Similar to the ICSID, the UNCITRAL Arbitration Rules provide, "[t]he arbitral tribunal

viewed in conjunction, reflect clear and unmistakable evidence that the parties delegated questions of arbitrability to the arbitrators.

Therefore, this Court need not reach Spain's challenge that *Achmea* and related cases retroactively voided any agreement to arbitrate this case under the ECT (the very questions it raised before the Tribunal and Annulment Committee), as those are questions of arbitrability that the parties clearly delegated to the ICSID tribunal.  In fact, this Court is powerless to disturb those findings.  *See Stileks*, 985 F.3d at 878 (noting that where the parties have delegated questions of arbitrability – including jurisdiction – to the arbitrators, the court possesses "no power" to decide that issue anew) (quoting *Henry Schein*, 139 S. Ct. at 529); *see also Tethyan*, 590 F. Supp. 3d at 275 ("Stated simply, the ICSID Tribunal determines its jurisdiction over a dispute.  Thus, ICSID's jurisdictional power—as agreed to by Pakistan's signature on the Treaty—renders binding on this Court the Tribunal's arbitrability determination."); *Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, No. 17-1457, 2018 WL 6605633, at *6 n.4 (D.D.C. Dec. 17, 2018) ("Indeed, even as to questions of ICSID's jurisdiction, provided that the question has been 'fully and fairly litigated and finally decided' by the tribunal, this Court has no authority to relitigate the matter here.") (quoting *Durfee v. Duke*, 375 U.S. 106, 111 (1963)).

Applying *Chevron's* burden-shifting analysis, then, this Court finds that Plaintiffs have made their prima facie showing under the FSIA arbitration exception.  *See* 795 F.3d at 204; *Stileks*, 985 F.3d at 877 (determining as sufficient "copies of the [underlying treaty], the notice[] of arbitration, and the tribunal's decision."); *supra* Section III.A.  The only argument Spain offers to

---

shall have the power to rule on objections that it has no jurisdiction, including any objections with respect to the existence or validity of the arbitration clause," and "shall have the power to determine the existence or the validity of the contract of which an arbitration clause forms a part." UNCITRAL Arbitration Rules, G.A. Res. 31/91 art. 21 (Dec. 15, 1976).

rebut the presumption is that there was no agreement to arbitrate.  As examined in length above, however, Spain's argument is a question of arbitrability that the parties clearly and unmistakably delegated to the Tribunal.  Spain cannot use this merits argument to undermine the Court's jurisdiction under the FSIA.  *Stileks*, 985 F.3d at 878-79; *Chevron*, 795 F.3d at 205-06; *Tethyan*, 590 F. Supp. 3d at 275; *9REN*, 2023 WL 2016933, at *6; *Nextera*, 2023 WL 2016932, at *7.  Because Spain offers nothing else to rebut the presumption here, it fails to meet its burden.  Therefore, this Court finds that it subject matter jurisdiction here under the FSIA's arbitration exception.  28 U.S.C. § 1605(a)(6).

### B.     The Award is Entitled to Full Faith and Credit

Once a court satisfies itself of jurisdiction, federal law requires that ICSID awards "shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States."  22 U.S.C. § 1650a(a).  Although the Court's role in enforcing an ICSID arbitral role is "exceptionally limited, the Court is more than a rubber stamp."  *TECO Guatemala Holdings, LLC v. Republic of Guatemala*, 414 F. Supp. 3d 94, 101 (D.D.C. 2019) (internal quotation marks omitted).  Specifically, a court is "not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award."  *Mobil Cerro Negro*, 863 F.3d at 102, 118 (stating that an "ICSID-award debtor would be a party to the action . . . but would not be permitted to make substantive challenges to the award").  This limited role "reflects an expectation [under the ICSID and enabling statute] that the courts of a member nation will treat the award as final."  *Id.* at 102.

As such, all a court need do is "ensure that it has subject-matter and personal jurisdiction; that the award is authentic; and that its enforcement order tracks the award."  *Tethyan*, 590 F. Supp. 3d at 268 (citing *TECO Guatemala*, 414 F. Supp. 3d at 101).  All these elements are met here.  The

22

Court has held it has subject matter jurisdiction, *see also* ECF No. 54-3 ¶¶ 1-17, and Spain does not contest personal jurisdiction. *See* ECF No. 6 ¶ 5. Nor does Spain challenge the authenticity of the ICSID Award, *see* ECF No. 54-3 ¶¶ 18-22, or that this Court's enforcement order would not track the Award. *See id.* ¶¶ 23-24. None of these facts are in genuine dispute. Although Spain argues that the Award is not owed full faith and credit because no valid arbitration agreement existed, ECF No. 43-1 at 33, Spain cannot "recycle a losing jurisdictional argument" to deny full faith and credit to an award. *Tethyan*, 590 F. Supp. 3d at 276.[8]

Therefore, the Award is entitled to full faith and credit and must be enforced.

## C. Spain's Remaining Challenges Must be Rejected

Spain makes two additional challenges to the Award. First, Spain argues that the Complaint should be dismissed because it violates the foreign sovereign compulsion doctrine. ECF No. 43-1 at 31. Second, Spain maintains the Complaint should be dismissed under the doctrine of *forum non conveniens*. *Id.* at 34. Both arguments fail.

Spain argues that recognition of the Award would require it "to recognize and validate an arbitration that contravenes EU law." ECF No. 43-1 at 31-32. The foreign sovereign compulsion doctrine allows for a defendant subject to separate and conflicting legal obligations under two sovereign states to raise a defense to conduct that occurs in one state and runs afoul of the laws of the other. *See Mannington Mills, Inc. v. Congoleum Corp.*, 595 F.2d 1287, 1293 (3d Cir. 1979) (holding that the doctrine "shields from antitrust liability the acts of parties carried out in obedience

---

[8] In the alternative, Spain argues that the Tribunal "exceeded its authority" because the Award constituted "state aid" (subsidies to investors), which is exclusively within the control of the European Commission. *See* ECF No. 43-1 at 33. This Court cannot disturb the findings of the Tribunal, which considered and rejected this argument. ECF No. 1-2 ¶¶ 306-310; *see also* ICSID, art. 53. (the "award shall be binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in this Convention.").

to the mandate of a foreign government."). The doctrine applies to private parties, not governments, and exists mainly in the realm of antitrust. *See In Re: Vitamin C Antitrust Litig.*, 8 F.4th 136, 145 (2d Cir. 2021) ("A defendant invoking [the foreign sovereign compulsion doctrine] must show that a 'foreign government's order . . . compelled [its] business to violate American antitrust law.'") (quoting *Mannington Mills*, 595 F.2d at 1293).

Spain offers no authority to support its contention that the doctrine applies here to a government outside the antitrust context. Nor does it provide any meaningful argument for the expansion of the law. In any event, Spain cannot claim compulsion where it has willfully submitted to and participated in the ICSID process.[9] Thus, the foreign compulsion doctrine does not provide Spain the "out" it seeks. *See 9REN*, 2023 WL 2016933, at *11 (finding the foreign sovereign compulsion doctrine inapplicable); *Nextera*, 2023 WL 2016932, at *12 (same). Moreover, Spain's purported "inability" to submit to the Award under EU law does not affect this Court's mandate to enforce the Award under 22 U.S.C. § 1650a(a). Reading such an exception into the law would run afoul of the ICSID Convention and upend this Court's obligation to recognize the Award under the relevant statutory and treaty obligations. *See* ICSID, art. 53(1) ("The award shall be binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in this Convention.").

Finally, Spain argues that the Complaint should be dismissed under the doctrine of *forum non conveniens*. Generally, under the doctrine of *forum non conveniens*, courts must decide "(1) whether an adequate alternative forum for the dispute is available and, if so, (2) whether a

---

[9]     As this Circuit has held, petitioners, in asking a court to confirm an ICSID arbitral award, "have not challenged the acts or decisions of a foreign sovereign," but instead "have merely sought to enforce a decision rendered by a forum for international arbitration to which [the foreign sovereign] has voluntarily submitted itself." *Micula v. Gov't of Romania*, No. 20-7116, 2022 WL 2281645, at *2 (D.C. Cir. June 24, 2022).

balancing of private and public interest factors strongly favors dismissal." *Tatneft v. Ukraine*, 21 F.4th 829, 840 (D.C. Cir. 2021) (quoting *Chabad*, 528 F.3d at 950)). Spain argues that the judicial system of the EU provides adequate fora and that "the ordinary place to find Spanish assets is in Spain." ECF No. 43-1 at 34. Spain cannot rely on *forum non conveniens* here.

The D.C. Circuit has unequivocally held "that *forum non conveniens* is not available in proceedings to confirm a foreign arbitral award because only U.S. courts can attach foreign commercial assets found within the United States." *Stileks*, 985 F.3d at 876 n.1 (citing *TMR Energy Ltd. v. State Prop. Fund of Ukraine*, 411 F.3d 296, 303-04 (D.C. Cir. 2005)). Spain attempts to distinguish this precedent by arguing that, in each of those cases, the court assured itself of jurisdiction before addressing the *forum non conveniens* question. ECF No. 43-1 at 37 ("The Court's jurisdiction must be resolved as a threshold matter—and thus well before the issue of attachment and enforcement in *TMR Energy* become relevant."). Setting aside the fact that the Court has already assured itself of its jurisdiction, the Circuit's prohibition on invoking the doctrine in arbitral enforcement claims applies broadly. *Tatneft*, 21 F.4th at 840 (stating that, because only United States courts can attach foreign commercial assets within the United States, "no adequate alternative forum outside the U.S. exists. The rule applies even if the defendant 'currently has no attachable property in the United States, [as] it may own property here in the future.'") (quoting *TMR*, 411 F.3d at 303).

### D. Summary Judgment is Appropriate

In enforcing ICSID awards, summary judgment is appropriate[10] "where the party seeking recognition or enforcement provides a copy of the award to the relevant court . . . and where there

---

[10] Plaintiffs seek judgment on the pleadings under Rule 12(c) or, in the alternative, for summary judgment. ECF No. 54. Plaintiffs argue that "there is no obligation for Rule 12(c) to only apply in circumstances where both parties have filed pleadings." ECF No. 59 at 29. This is

are no defenses to enforcement." *See Koch Mins. Sarl v. Bolivarian Republic of Venez.*, No. 17-cv-2559, 2021 WL 3662938 (D.D.C. Aug. 18, 2021) (quotation omitted); *see also Valores Mundiales, S.L. v. Bolivarian Republic of Venez.*, No. 19-cv-46, 2022 WL 17370242, at *6-9 (D.D.C. Aug. 3, 2022) (granting summary judgment and enforcing an ICSID award after ensuring the Award was authentic and entitled to full faith and credit); *TECO Guatemala*, 414 F. Supp. 3d at 101-02, 108 (same); *Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venez.*, No. 20-129, 2021 WL 326079, at *4 (D.D.C. Feb. 1, 2021) ("Summary judgment to confirm and enforce an ICSID arbitration award should be granted where the party seeking recognition or enforcement provides a copy of the award to the relevant court."), *remanded on other grounds*, 23 F.4th 1036 (D.C. Cir. 2022); *Tethyan*, 590 F. Supp. 3d at 275-77 (confirming award and entering judgment after denying [respondent's] motion to dismiss); *Mobil Cerro*, 863 F.3d at 118 ("After the complaint is filed and service effected, the award-creditor may file . . . a motion for summary judgment. The ICSID award-debtor would be a party to the action . . . but would not be permitted

---

incorrect.  The text of Federal Rule of Civil Procedure 12(c) states that the pleadings must be "closed," before a party may move for judgment under that Rule.  *See* Fed. R. Civ. P. 12(c); *see also* 5C Charles A. Wright & Arthur Miller, Federal Practice & Procedure § 1367 (3d ed. 2004) (noting the need for "competing" pleadings and indicating that "a motion for a judgment on the pleadings may be made at any time after the pleadings are closed"); *Bayshore Cmty. Hosp. v. Hargan*, 285 F. Supp. 3d 9, 20-21 (D.D.C. 2017) ("If the plaintiff files a Rule 12(c) motion before the defendant has filed a response to the complaint, however, then the motion is simply premature and should be denied.").  Plaintiffs offer no authority on point to suggest otherwise.  *See* ECF No. 59 at 29.  Because Spain has yet to file an answer in this case, Plaintiffs' motion under Rule 12(c) is premature.

For the reasons stated above, however, summary judgment in this specific case is appropriate.  In fact, Spain did not respond to Plaintiffs' statement of material facts not in dispute with their own statement of facts allegedly in dispute.  ECF No. 54-3 ¶¶ 1-24.  Because of this, this Court treats Plaintiffs' statement of facts as conceded.  *See* Fed. R. Civ. P. 56(e)(2); LCvR 7(h)(1); *see also Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 507 (D.C. Cir. 2016) (treating uncontested assertions of fact as true).  Even if this Court did not deem those facts conceded, there is no genuine dispute that the material facts necessary to confirm the Award are present and undisputed.

to make substantive challenges to the award.").  This aligns with courts, "exceptionally limited" role in enforcing ICSID arbitral awards.  *TECO Guatemala*, 414 F. Supp. 3d at 101.

Summary judgment is also appropriate here.[11]  As this Court set forth in Section III.B., there is no genuine issue of material fact that the elements to confirm the Award are present here and that Plaintiffs are entitled to judgment as a matter of law.

## CONCLUSION

For the reasons set forth above, this Court recommends that Spain's Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) be **DENIED**.  This Court further recommends that Plaintiffs' Cross-Motion for Judgment on the Pleadings be **DENIED**, but that its alternative Motion for Summary Judgment be **GRANTED**.

In light of this Court's Report and Recommendation, this Court further recommends that the District Court order the parties to meet and confer to submit a joint proposed final judgment consistent with this Court's Report and Recommendation.  That proposed judgment shall include all elements included in the ICSID Award, including a current calculation of pre- and post-judgment interest.

*******************

The parties are hereby advised that, under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 14 days

---

[11]      Spain asserts that entry of summary judgment would be "premature" because "as a foreign sovereign, Spain is entitled to an automatic interlocutory appeal."  ECF No. 57 at 3.  In Spain's view, this Court must refrain from entering judgment despite there being no issues left to litigate. *Id.*  Spain has cited to no binding precedent that requires this Court, within the context of an ICSID award enforcement action, to hold off simply because it wishes to take an interlocutory appeal on the issue of jurisdiction.  *Id.*

of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the report and/or recommendation to which objection is made and the basis for such objections.  The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation.  *See Thomas v. Arn*, 474 U.S. 140, 144–45 (1985).

Date: March 31, 2023

                                                                        _____
MOXILA A. UPADHYAYA
UNITED STATES MAGISTRATE JUDGE